These suits, which were consolidated for trial, are based on the allegations that on the morning of June 7, 1935, at approximately 10:30 o'clock a Studebaker coach owned by Ralph Thibodeaux was being driven by Adrien Thibodeaux, accompanied by his wife, Mrs. Armance Stoutes, and his grandchild, Vernon Voorhies, all sitting on the front seat of the car, in a northerly direction along the Breaux Bridge-Lafayette paved highway at the rate of about ten miles per hour; that this highway intersects at practically right angle the defendant railroad tracks in the city limits of the incorporated town of Breaux Bridge in the Parish of St. Martin; that at this intersection defendants' train, travelling in a westerly direction, at a rapid and unlawful rate of speed, ran into and collided with the said Studebaker automobile; that at the time of the accident there was a torrential rain falling, accompanied by an easterly wind which caused the right side of said automobile to be practically frosted; that the automobile was struck at approximately the middle point by the front of the steam engine of defendant railroad and was dragged sidewise along said track a distance of 85 feet; that the rapid rate of speed of the train was approximately 25 to 30 miles per hour; that because of the construction of the engine, it was impossible for the engineer, seated on the right side, or the fireman, seated on the *Page 225 
left side of the engine to observe objects immediately in front of the train on the right side, and that in violation of all railroad regulations and in disregard of life and property the said engineer and fireman, made defendants herein, carelessly and recklessly operated the engine without maintaining a proper lookout; that the said train was not equipped with proper braking facilities at the time of the accident; that the said train approached the intersection without blowing the whistle or ringing the bell.
It is alleged further that as a result of the accident Adrien Thibodeaux, the driver of the automobile, sustained serious personal injuries, causing an enlargement of his heart, severe mental shock, a fracture of several ribs and bruises and contusions about the body. He itemizes his damage in an aggregate amount of $9,112.50.
His wife, in a separate suit, sets out that she received personal injuries, consisting of broken ribs, injury to her chest, injury to the sacro-iliac area of her back, and a fracture of her shoulder, claiming damages in the total amount of $26,750.
The parents of Vernon Voorhies, a minor, filed suit in his behalf for personal injuries to his head and scalp, claiming damages in the total sum of $1,017.50.
Ralph Thibodeaux filed suit as owner of the car, claiming damages to the car in the sum of $450.
The defendants admit that the collision occurred at the intersection of the Breaux Bridge-Lafayette paved highway and the tracks of the defendant railroad company, at a point within or near the corporate limits of the town of Breaux Bridge at precisely 10:20 A.M., June 7, 1935, but they deny all other material allegations of the petitions and aver that the train gave all required and proper signals by blowing the whistle and ringing the bell and that at the time of the collision the train was drifting at approximately 12 miles per hour, and that, in effect, the collision resulted from the negligent driving of Adrian Thibodeaux and his failure to decrease the speed of his automobile in attempting to cross defendants' railroad tracks and the failure of himself and the other occupants of the automobile to heed the blowing of the whistle and the ringing of the bell and the warning stop signs at the railroad crossing.
The suits were filed in June, 1936, and testimony was taken in November, 1936, and on June 5, 1937, and on June 17, 1937, and the cases were then left open for the taking of further testimony in September, 1937, but the record does not reveal what happened to these cases from that time until June, 1941, when, from the minutes, it appears that judgments were rendered rejecting the demands in each case; from which judgments the plaintiffs have appealed.
Reviewing these cases, we find a very large record consisting of much oral testimony and many exhibits, a considerable part of which has very little, if any, direct bearing on the vital points involved in the cases. The primary question involved in these cases is whether or not there is any liability on the part of the defendant, and considering that question we feel that the following facts are fairly well established and may be accepted as true:
Adrien Thibodeaux, with his wife and grandson, were travelling north on the paved highway at a moderate rate of speed, anywhere from 25 to 40 miles per hour. They all knew that this crossing was located at this point as Thibodeaux and his wife had lived in the vicinity for several years previous to this time. They also knew that this train usually passed over this crossing going to Lafayette between ten and eleven o'clock in the morning. It was raining at the time sufficiently to blur or frost the windshield and glasses on the doors of the car, making it difficult to see out of the car except through the circular disc made by the wiper on the windshield. Except for the rain there was nothing to prevent Thibodeaux from seeing the approaching train to his right, coming from the east, for a distance of five or six hundred feet before reaching the crossing, and, of course, there was nothing to keep the fireman on the train from seeing the car approaching from his left and travelling north toward the crossing for about the same distance.
Thibodeaux admits that he did not see the train until it struck his car on the right side and dragged it some 50 to 70 feet west along the track. He says that he looked, but he did not see the train approaching from the east as he could not see out of the side glass to his right. He did not know that he was on the railroad track but knew that he was close to it, and he did not hear any whistle blow or bell ring. In other words, he could see the road in front of him but could not see to his right or left on account of the dampness of the glass in the doors of the car. He admits that he did not stop *Page 226 
and says that he was going 15 to 20 miles per hour. His wife testified that she was sitting on the right side and could not see out of the door through the glass and did not see the train approaching; that she told her husband he had better stop when she could not see out of the car on account of the rain, and just after she told her husband he had better stop, the train struck the car and dragged it along the track as already stated.
There is no question but that the driver of the car was guilty of negligence in many respects; in failing to keep a proper lookout, in failing to see or hear the approaching train, and in failing to stop or slow down for the crossing. In fact, counsel for plaintiffs seems to concede the negligence of the driver of the car and now relies principally on the last clear chance doctrine on the ground that the fireman and engineer could have avoided the accident had they been keeping a proper lookout and had they taken the proper precautions to avoid the accident after they saw or should have seen that the car was not going to stop for the crossing.
Without reviewing in detail the testimony, we think it is clearly shown, or proven, that the train was not going more than 12 or 15 miles per hour which was well within the speed limit, and that the brakes and equipment on the train were in good order, the whistle was blown for the crossing and the bell was ringing as the train approached the crossing. Therefore, it is obvious that there was no negligence on the part of the operators of the train unless they saw or should have seen the danger in which the driver of the automobile had placed himself in time to avoid striking him and failed to take the necessary steps to avoid the collision.
With reference to whether or not the operators of the engine were keeping a proper lookout and should have realized that the automobile was not going to stop for the crossing and should therefore have stopped before reaching the intersection, we find the following situation: The engineer was sitting on the right side of the engine and naturally could not see the automobile approaching from the left side. The fireman, who was sitting on the left side of the locomotive, said that he saw this car approaching toward the crossing while the train was several hundred feet south of the crossing, at which time the car appeared to be going about 50 miles per hour, but that the car slowed down to about 30 to 35 miles per hour as it got nearer to the intersection, and that he did not anticipate that the car was not going to stop until it reached a point about 50 to 60 feet from the intersection, at which time the train was within a distance of approximately 30 feet from the crossing, and at which time he called to the engineer to stop the train, and the engineer thereupon applied the emergency brake immediately, but too late to avoid the collision. There is some little difference in the testimony of the fireman and the engineer as to just when the brake was applied, but nevertheless the preponderance of the evidence is to the effect that the brake was applied as soon as the fireman could reasonably anticipate that the automobile was not going to stop and could give the engineer the necessary order or signal. In view of the fact that both operators were at their proper places in the locomotive engine as they approached the intersection and that both were apparently keeping a proper lookout and acted with due diligence as soon as the emergency arose and could be anticipated, we cannot find that they were guilty of any negligence or that they had the last clear chance to avoid this collision.
For these reasons, the judgments will be affirmed by a decree in each case.