McBRIDE, Judge.
The widow and major children of Charles Anderson, a colored man 58 years of age, instituted this suit to recover damages for his death which was caused by being struck by a truck owned by defendant, at about 7 o’clock p. m., on March 28, 1953, on Poydras Street, between Galvez and Broad Streets, at a point about 370 feet past Gal-vez Street. The defendant’s truck was being operated by its employee, Stanley R. McMahon, in a westerly direction, that is, towards Broad Street. Poydras Street, between Galvez and Broad, to the left is bounded by a 5-foot slightly elevated neutral ground separating it from the other portion of Poydras Street dedicated to traffic movements toward the other direction. On the right, Poydras Street is bounded by a stretch of curbing about 1200 feet long without any path for pedestrians and without street intersections. Near and paralleling the curbing is a railroad siding. When struck and killed, Anderson was garbed in dark clothing, and there is no question whatever that he was in a highly drunken condition.
The petition charges defendant’s driver with eleven specifications of negligence, all of which except one have passed out of the case. Plaintiffs, who perfected this appeal from the judgment dismissing their suit, depend, in seeking to reverse the judgment on the contention that defendant’s driver had the last clear chance to avoid the accident but made no attempt to do so.
*762 The track entered Poydras Street at Baronne Street and proceeded out Poydras Street in the lane next to the neutral ground until it reached Galvez Street where it was brought to a stop in obedience to a traffic sign. Three lanes accommodating traffic traverse this portion of Poydras Street, each lane having a width of about 10 feet. Defendant’s driver after making the stop, then proceeded to cross Galvez Street, and after traveling in the left lane on Poydras Street for a distance of some 75 feet, realized he would have to make a right turn to go into Broad Street, and with that in view, he proceeded to leave the left lane, cross the middle lane, and then enter the right lane to be in a proper and safe position to make the right turn at Broad Street. Following closely behind the truck in the left lane was another automobile, and McMahon, to feel safe in making the maneuver over to the right-hand lane, looked into his rear-view mirror to appraise the traffic following him. According to McMahon, just about the time he had straightened out in the extreme right lane and was traveling at about 20 to 25 miles per hour, he heard something strike the right part of the track. He brought his vehicle to a stop within a short distance and backed the truck to the point of the impact and there found Anderson’s body lying in Poydras Street 3 feet away from the right curb.
Plaintiffs produced no eyewitnesses and there is no testimony whatever as to the activities or position of Anderson immediately before the accident. Defendant’s driver saw nothing and heard nothing except the thud on the right side of the truck, and his impression was that the truck had struck a box. Pajares and Roth, who were riding in the automobile following the truck, observed no one in the roadway although they say the headlights of the automobile afforded excellent visibility. Notwithstanding, plaintiffs argue that Anderson was at least 12 feet out in the roadway and that McMahon could have avoided the accident but failed to see Anderson in time because McMahon was looking into his rear-view mirror instead of keeping his eyes focused on the road ahead. The contention that Anderson was not nearer than 12 feet from the curbing was predicated on the testimony of three members of the New Orleans Police Department who appeared on the scene shortly after the accident for the purpose of making an official investigation. They each testified they found about 12 feet away from the curb a mound of mud such as is caused to fall from an automobile when it comes into contact with an object in the roadway. The officers, however, expressed no opinion as to what part of the truck the mud might have fallen from. They believed that Anderson’s body was hit by the mid-front of the truck because an examination revealed to them a dent in the center of the grill-work and another dent immediately above in the hood of the truck. These dents, they say, were undoubtedly made by Anderson’s body as the metal at the site of the dents, was free of dust as though wiped clean by Anderson’s clothing. The speculations of the police officers carry little or no probative worth. Assuming that the mound of dirt dropped from the truck, it seems to us it could just as well have dropped from the left side as from any other part of the vehicle as it may have been that the caked mud there was less adherent than elsewhere. If the dirt came from the left side, that fact would in a large measure corroborate the statements of McMahon, Pajares, and Roth that the truck was but from 3 to 5 feet away from the rig-ht-hand curb when the accident happened. The opinions expressed by the officers that Anderson was struck by the mid-front of the truck makes little impression upon us. The photograph of the truck reflects not only the dents referred to by the officers but others as well, one in particular being located toward the front portion of the right-front fender. McMahon was certain that the thud came from the right side and his assertions are in a degree supported by Pajares and Roth who say they saw dust flying from the rear of the right side of the truck and Roth believed at the time that a dog had been hit.
*763 The testimony of Dr. Stanley H. Dur-lacher, an expert in the fields of pathology and toxicology, tends to bolster McMahon’s claim that Anderson’s body came into contact with the right side of the truck. Dr. Durlacher advanced the opinion that Anderson could not possibly have been hit by the front of the truck, his reason for the conclusion being that had Anderson been run into by the bumper, his legs would have shown what he termed “bumper fractures.” He pointed out that Anderson’s injuries were chiefly in the thorax and upper abdomen. The opinion of this expert seems to be plausible.
We agree with the plaintiffs’ counsel that if Anderson had been in the roadway and had lost all power to save himself and if McMahon should have seen him there in time to avert the accident, there would be liability in the defendant company. This would be so because of the now well-recognized doctrine of apparent peril which is an offshoot of the doctrine of the last clear chance. Under the doctrine of apparent peril, one who may have been at fault in placing himself in a perilous situation but who no longer possesses the ability to save himself may, nevertheless, recovered from a person who causes him injury if that person has the ability to avoid an accident and should have discovered the peril in time to do so. This was the holding in Jackson v. Cook, 189 La. 860, 181 So. 195.
Plaintiffs also cite Rottman v. Beverly, 183 La. 947, 165 So. 153, and several cases decided by the Courts of Appeal. However, none are apposite here for the simple reason that plaintiffs have not borne the burden of proving the facts necessary to bring the instant case within the doctrines announced in the cited cases. There is no showing that Anderson was in a position of peril or that he even was in Poydras Street at any time before the actual moment of the impact, nor is there a showing that McMahon had the ability or an opportunity to avoid the accident. No one knows exactly what happened, but after a careful analysis of the evidence, it seems much more logical to assume that Anderson in his intoxicated condition staggered over the curbing and into the side of the truck than it is to assume he was out in the street and the truck ran him down.
A plaintiff who seeks recovery under the doctrine of the last clear chance and the extensions thereof found in Rottman v. Beverly, supra, and Jackson v. Cook, supra, must carry the burden of showing all of the facts essential to. make, such doctrines applicable and such facts must be proven and will not be presumed. See 65 C.J.S., Negligence, § 213, p. 978.
The above rule was applied by the Supreme Court in the case of Courtney v. Louisiana Ry. & Navigation Co., 133 La. 360, 63 So. 48, 50. The Court there said:
“* * * The burden of proof was on the plaintiff to prove, with legal certainty, that Dawson, the engineer, or the fireman sazv, or should have seen, the body of her husband on the track in time to have avoided the accident. * * *
******
“The doctrine of the last clear chance necessarily implies that the defendant, under the circumstances of the case, saw the danger or was grossly negligent in not seeing it, in time to avoid the accident. The evidence in this case fails to establish either hypothesis with any degree of certainty.”
In Heydorn v. New Orleans Public Service, Inc., 35 So.2d 893, 898, decided by this court, we made this observation:
“While it is true that where there are shown facts which make this doctrine applicable, the burden shifts to the defendant to explain the failure to see the person who should have been seen, the doctrine has no application until the plaintiff has first shown the necessary facts. In other words, he must first show that he, himself, has lost the ability to save himself and that the defendant could have seen him and could have avoided an accident. The *764 plaintiff here has shown only the first fact; that he himself had lost the ability to save himself. He has shown none of the other necessary facts except that he.was later injured. The burden was on him to show these other facts as it always is when a plaintiff relies for recovery upon the Doctrine of the Last Clear Chance and the extension of it, the Doctrine of Discovered Peril. See Courtney v. Louisiana Ry. & Navigation Co., 133 La. 360, 63 So. 48.’’
See also Phelan v. New Orleans Public Service, La.App., 56 So.2d 173.
In view of our conclusion that the defendant is not liable it was unnecessary to discuss the exceptions of no right of action and lack of capacity pleaded by defendant in this court.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.