86 So.2d 681

**DELTA FIRE & CASUALTY COMPANY**

v.

**TEXAS & PACIFIC RAILWAY COMPANY.**

No. 42358.

March 26, 1956.

Watson, Blanche, Fridge, Wilson, Posner & Thibaut, Baton Rouge, for plaintiff-appellant.

Breazeale, Sachse & Wilson, Baton Rouge, for defendant-appellee.

McCALEB, Justice.

Plaintiff insurance company brought this suit as subrogee of W. H. Gillen to recover $4,495 property damages resulting from an

accident in which Gillen's truck and trailer were virtually demolished in a collision with defendant's train. In the lower court the claim was denied on the ground that the truck driver was guilty of the grossest sort of negligence, which was a contributing, if not the sole, cause of the accident. Plaintiff has appealed.

The accident occurred on a clear day at about 10:30 a. m. on a gravel road known as Bayou Choctaw road which proceeds in a general northwesterly direction from the Port Allen-Plaquemine Highway with which it connects some three miles north of Plaquemine. Defendant's railroad tracks run parallel to the main highway and cross the Bayou Choctaw road at a point approximately 95 feet from the highway. This intersection is marked on both sides with standard "Louisiana Law Stop" signs as required by R.S. 45:562.

Just prior to the collision, the Gillen truck was being driven in a southerly direction on the Port Allen-Plaquemine Highway toward the Bayou Choctaw road. When the truck driver, who was thoroughly familiar with the route, reached the intersection he had to make a sharp turn to the right of over 90 degrees in order to get on the Bayou Choctaw road. This turn is difficult with a large truck and trailer and requires a "jackknifing" of the vehicles in order to negotiate it. After the driver had completed the turn and straightened his truck and trailer on the road in a position to proceed forward, the front of the truck

had arrived at a point some 15 feet from the first railroad track. At this point the driver's companion, occupying the adjoining seat in the cab, noticed for the first time that a train, proceeding south at a fast speed, was bearing down upon them from the right about 150 feet away. He immediately apprised the driver of the emergency and the latter applied his brakes but the truck slid onto the track and then the motor died. The two men succeeded in vacating the cab just before the train crashed into the truck, carrying it about one-half mile before finally coming to a stop. The estimated speed of the train, consisting of engine and caboose only, was 60 miles per hour, while that of the truck and trailer was 13 or 14 miles per hour, following its completion of the turn. There were no obstacles to obscure the vision of the driver of the truck other than the maneuvers necessary to the making of the sharp turn.

The truck driver frankly acknowledged his failure to stop, look and listen in conformity with R.S. 45:563 and the testimony of his helper, while tending to show that defendant's train crew did not sound the engine's bell or whistle until some 150 feet from the crossing, is otherwise corroborative of the driver's carelessness. In view of this evidence, counsel for defendant elected to submit the case on the statement of plaintiff's witnesses and the trial judge, believing that the truck driver's negligence

was a bar to recovery (irrespective of any omissions that might be attributable to the train crew), entered judgment accordingly.

■ The judge did not err. While counsel for plaintiff attempt in argument and brief to exonerate the truck driver from fault on the theory that his view of the crossing was obscured by the difficulty he encountered in negotiating the sharp turn, no legal excuse can be devised to explain his failure to use his normal faculties before he reached the railroad tracks. If the negotiation of the sharp turn obscured his vision, all the more reason to exercise caution and be certain that no train was approaching. Calvert Fire Ins. Co. v. Texas & Pacific Ry. Co., La.App., 55 So.2d 693 and Perrin v. New Orleans Terminal Co., 140 La. 818, 74 So. 160.

Counsel also invoke the doctrine of last clear chance which they say is applicable in view of the testimony of plaintiff's witnesses that they did not hear any warning signals, by whistle or bell, until the train was approximately 150 feet from the crossing.

■■ But we find no room in this case for the doctrine of last clear chance. In the first place, the burden of proof was on plaintiff to show that the train crew saw (or should have seen) the truck and realized (or should have realized) that it was in imminent peril in time to avoid the accident. Courtney v. Louisiana Ry. & Navigation Co., 133 La. 360, 63 So. 48 and Anderson v. Southern Bell Tel. & Tel. Co., La. App., 74 So.2d 761, certiorari denied December 13th 1954. In the absence of evidence as to the distance of the train from the crossing at the time the truck and trailer were approaching, it is well nigh impossible to say that the employees of defendant had a last clear chance to avert a collision.

■ Furthermore, there is another well-recognized rule of law which renders inappropriate the last clear chance doctrine— viz., that, even if the record justified a holding that the train crew should have noticed the truck and trailer before it reached the crossing, they would have been entitled to assume that the truck driver would comply with the statutory law and jurisprudence of this State and stop before undertaking to negotiate the crossing, as there was nothing so unusual about the truck's approach as to place ordinarily prudent men on notice that it was in distress. Jones v. American Mut. Liability Ins. Co., La.App., 189 So. 169, certiorari denied July 14th 1939; Eggleston v. Louisiana & A. Ry. Co., La.App., 192 So. 774 and Fontenot v. Freudenstein, La.App., 199 So. 677.

The judgment is affirmed.