152 So.2d 845 (1963)
Enes J. PARKS, Sr.
v.
TEXAS PACIFIC-MISSOURI PACIFIC TERMINAL RAILROAD OF NEW ORLEANS.
No. 1023.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1963.
*846 Dufour, St. Paul, Levy & Marx, Leonard B. Levy and William M. Lucas, Jr., New Orleans, for defendant and appellant.
Ferdinand M. Lob, Metairie, for plaintiff and appellee.
Before McBRIDE, REGAN and YARRUT, JJ.
McBRIDE, Judge.
On the night of November 26, 1958, a diesel locomotive owned and operated by defendant, which was moving backward pulling a hopper car, struck a passenger bus about its left rear wheel as the bus was crossing defendant's main line track at the intersection of said track and Avenue A in Westwego, Parish of Jefferson. Plaintiff, an employee of the owner of the bus, was its operator and sole occupant, and he brings this suit against defendant to recover for personal injuries, it being alleged that the accident was caused through the fault of the employees of defendant in several particulars, the last of which is "that the train crew could and should have avoided the accident by stopping the train in time to avoid hitting the bus." The defendant disavows negligence on the part of its employees and, alternatively, pleads the contributory negligence of plaintiff and then, as reconvenor, claims damages of plaintiff to the extent of the injuries sustained by the locomotive. After a trial below, plaintiff recovered a judgment for $200 and the reconventional demand was dismissed. Defendant takes this appeal.
The judgment is predicated on the holding that the operator of the train had the last clear chance to avoid running into the bus, but failed to exercise it. Said the judge in his reasons for judgment:
"When it became apparent that the bus would cross its tracks, the engine crew still had sufficient notice, time and distance, with due allowance for the reaction factor, within which to stop the train before the collision. Their failure to utilize this last opportunity to reasonably, timely and diligently react and thereby avoid the accident renders the defendant liable, despite the initial and continuing negligence of the bus driver. * * *"
That plaintiff was negligent there is no doubt. Avenue A at the point where the train track intersects it is a paved twoway thoroughfare 20 feet wide with abutting 4-foot sidewalks. The grade crossing at the site of the accident is controlled by a bell and a flashing light semaphore with a pendulum-type motion commonly referred to as a "wig wag" signal. Plaintiff was traveling in a northerly direction and the train, traveling eastwardly, approached *847 from his left. He insists that at a point 10 feet before reaching the railroad track, he stopped and looked but saw nothing. The wig wag signal, with the exception of the flasher light which was broken, was swinging and the crossing bell was sounding and we agree with the trial judge that this was sufficient to have attracted a vigilant motorist's attention to an approaching train. Not alone that, but the automatic bell on the locomotive was being sounded and the headlight on its rear end was illuminated. All this would inevitably lead to the conclusion that plaintiff took no precautions whatsoever before attempting to make the crossing and that he heedlessly and negligently drove his large bus, 32 feet long and capable of hauling 36 seated passengers, onto the track totally oblivious of the oncoming train.
Appellant's diligent counsel strenuously argue that the doctrine of the last clear chance has no room for application in this case because when the three members of the train crew riding in the cab of the locomotive became aware or apprised of the fact that plaintiff was not going to stop the bus before entry upon the track, the locomotive was in such close proximity to the bus that there was no chance of any effective steps being taken to avoid a collision.
The testimony of the three members of the train crew is to the effect that the locomotive was moving backward toward Gretna at a speed of from 4 to 6 miles per hour immediately prior to the accident in obedience to the speed limit for trains passing through Westwego which is fixed at 6 miles per hour by town ordinance. They maintain that at the slow rate the train was moving, it could be brought to a complete stop within from 6 to 8 feet. They all testified that the bus driver failed to stop for the crossing after first giving them the impression that he would do so. The only discrepancy in their testimony pertains to the relative positions of the bus and the train when they first noted the bus and also when they became aware that the bus would not stop but would cross the track.
Roussell, the fireman, thought the train was 75 feet removed from the crossing when he noticed the bus which was then about 25 feet from the tracks. Under crossexamination Roussell estimated that the train was 25 feet from the crossing when he realized the bus was not going to stop and finally he acknowledged that he did not know how far away from the crossing the locomotive was, but that it was almost "at the crossing." The engineer, Kass, first observed the bus when it was 75 feet from the crossing and the train was 25 feet away from the point of impact. Kass later changed his statement by saying that his engine was 50 feet from the crossing when he first saw the bus which he says he kept under continuous observation. Hopel, the switchman, also testified he first saw the bus when it was 75 feet from the tracks and that the locomotive was then about 25 feet from the crossing.
The trial judge also said in his reasons for judgment:
"* * * Although the exact distance of the engine from the crossing, at the time the bus proceeded across the tracks, was never definitely established, none of its crew testified it had reached the sidewalk abutting the street, which would have been at least fourteen feet (14') from the bus, more than ample for it to come to a complete stop. The engine was obviously somewhere between the edge of the sidewalk and twenty-five feet (25') from it."
Nowhere in the record does the speed of the bus appear except in Roussell's testimony, his estimation being that the bus was going at a rate of speed three times faster than the train, which would fix the speed of the vehicle at from 12 to 18 miles per hour.
The three railroad employees thought that plaintiff would stop the bus before attempting to negotiate the crossing, and that as a matter of fact he "touched" his brakes but, without stopping, proceeded forward, *848 and that when they became aware that he did not intend to stop, it was then too late to avoid running into his vehicle.
The trial judge concluded from the trainmen's evidence that the locomotive could have been braked to a stop within 6 to 8 feet after it became known to them that the bus driver did not intend to stop before reaching the railroad. We think our brother below overlooked some pertinent testimony emanating from the engineer, Kass. Under cross-examination he was asked: "Why couldn't you not have stopped your train within 6 or 7 feet?" He made this reply: "In the first place, the brakes take about 5 seconds to set, and that would take up your time, that would take up the time the feet that you had there."
Traveling at 5 miles per hour the locomotive would negotiate 7.3 feet per second, and in view of the testimony of Kass regarding the setting of the brakes, the train would have traveled some 36 feet before the brakes could take effect after application, and allowing a normal reaction time of one additional second, 7.3 feet more would have been traversed even before the engineer made a move to apply the brakes. This being so, even if we assume that the train was as far as 25 feet removed from the point of impact when it became apparent the bus would attempt a crossing, there was insufficient stoppage distance and the crash was inevitable.
In order for the doctrine of last clear chance to control the case, the burden of proof was upon plaintiff to show a superior knowledge of his peril on the part of the train crew and that there was sufficient time following the discovery of the peril in which they could have taken steps to avert the accident. Franicevich v. Lirette, 241 La. 466, 129 So.2d 740; Rottman v. Beverly, 183 La. 947, 165 So. 153; Williamson v. Texas & Pacific Ry. Co., La.App., 66 So.2d 621; Thibodeaux v. Texas & N. O. R. Co., La.App., 6 So.2d 224.
Plaintiff testified that he did not become aware of the approaching train until his bus was upon the track and that the train was then just about to enter the intersection. In other words, what plaintiff was saying was that the engine was about 14 feet before reaching the point of impact. The trial judge in effect held that even if the locomotive was but 14 feet away, in view of the trainmen's testimony that a stop could be accomplished in from 6 to 8 feet, the engineer could have availed himself of the opportunity of averting an accident. To reach such a conclusion, His Honor below seems to have indulged in some "split second" calculation.
In Arnold v. Reuther, La.App., 92 So.2d 593, Judge Janvier of this court wrote:
"Counsel have made what may be called a `split second' calculation showing that he could have done this and that at least two or three feet would have remained had he been on the lookout and had he applied his brakes as soon as he could have applied them.
"A human being, no matter how efficient, is not a mechanical robot and does not possess the ability of a radar machine to discover danger before it becomes manifest. Some allowance, however slight, must be made for human frailties and for reaction, and if any allowance whatever is made for the fact that a human being must require a fraction of a second for reaction and then cannot respond with the mechanical speed and accuracy such as is found in modern mechanical devices, it must be realized that there was nothing that Reuther, a human being, could have done to have avoided the unfortunate result which the negligence of Mrs. Arnold brought upon herself."
There was nothing to put the train crew on notice when they saw the bus as far as 75 feet away from the track that it would make no stop. They all stated that *849 they assumed the driver would not heedlessly go upon the track. We think that the members of the crew had a right to rely on such assumption. The bus was going at a slow rate of speed and the rate at which it traveled gave no inkling or indication to the trainmen that it would not be brought to a stop. Furthermore, it was the duty of plaintiff not to have driven his motor vehicle upon the intersection of a railroad track and a municipal street at a grade crossing without first stopping at a distance of not less than 10 feet nor more than 50 feet from the nearest track and looking for approaching trains. See LSA-R.S. 32:243 and 45:563. The crew members had the absolute right to believe that plaintiff would obey the law and bring his vehicle to a stop and then look and discover the approach of the train. The members of a train crew are not negligent in indulging in the assumption that a motorist approaching the track will bring his vehicle to a stop, and there is no negligence even when they persist in such reasonable belief until it is no longer in their power to avoid the accident. Hanks v. Arkansas & Louisiana Missouri Ry. Co., La.App., 62 So.2d 139; Bordenave v. Texas & New Orleans R. Co., La.App., 46 So.2d 525; Matthews v. New Orleans Terminal Co., La.App., 45 So.2d 547.
All we can say in summation is that those in charge of the train were not possessed of the means or ability of avoiding the accident.
The proof is that defendant's locomotive suffered some minor damage which is shown to be $75, and it must be that defendant should recover this sum on its reconventional demand.
For the above reasons, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of defendant dismissing plaintiff's suit and that defendant in its role as plaintiff in reconvention have judgment against plaintiff as defendant in reconvention for the full sum of $75, together with legal interest from judicial demand until paid; plaintiff is to pay the costs of both courts.
Reversed and rendered.