HOOD, Judge.
This is an action for damages for personal injuries sustained by plaintiff, Edwin A. Scott, as the result of a collision between a truck and a train engine. The suit was instituted against Louisiana Midland Railway Company and the three employees of that company who were operating the engine at the time of the accident. The workmen’s compensation insurer of plaintiffs employer intervened, seeking reimbursement for the amount of compensation benefits it had paid to plaintiff.
The case was tried originally by jury, but the jury was unable to agree on a verdict, so by stipulation of the parties the case was submitted to the trial judge for decision. The trial court rendered judgment in favor of defendants, rejecting plaintiff’s demands, and plaintiff and the intervenor have appealed.
Plaintiff was the driver of the truck which was involved in this collision. He concedes that he was negligent, and that his negligence was a proximate and contributing cause of the accident. He contends, however, that he is entitled to recover from defendants under the doctrine of last clear chance.
The accident occurred about 5:20 a. m. on April 28, 1965, at a point where the Louisiana Midland Railroad track crosses U. S. Highway 84, near Archie, in LaSalle Parish, Louisiana. At that crossing the railroad runs generally north and south, the highway runs east and west, and the *598 track and the highway cross each other at about right angles. The highway is hard surfaced, the hard surfaced portion being 24 feet wide, with ten foot shoulders on each side. At the time the collision occurred, it was daylight, the weather was fair and dry, and visibility was good.
The evidence establishes that plaintiff was driving his employer’s heavily loaded International truck in an easterly direction on the highway at a speed of from 48 to 50 miles per hour as he approached this crossing. He reduced his speed to about 45 miles per hour when he reached a point about 300 yards from the railroad track and although he looked he did not see defendant’s engine approaching the crossing from his left. He then resumed his original speed of 48 to 50 miles per hour, and he continued to travel at that speed until he first applied his brakes a moment before the accident occurred. When plaintiff’s truck reached the point where, the railroad track crossed the highway,] it ran into the right side of a diesel yard engine, which was owned by the defendant railroad company and was being operated by its employees.
The diesel engine was traveling in a southerly direction on the railroad track at a speed of from 15 to 18 miles per hour as it approached the intersection. The engineer had blown the whistle and had operated the automatic bell of the engine continuously while the engine traveled a distance of at least 1000 feet immediately before it reached the crossing. The engine was painted orange, trimmed in green, and the paint had faded to such an extent that the top of the engine was white. Although it was daylight when the accident occurred, all of the lights on the engine were burning. There were no obstructions which could have prevented either the operator of the engine or the driver of the truck from seeing the other vehicle at any time after the train engine reached a point about 1000 feet from the crossing. A distance of about 50 feet would have been required to bring that engine to a stop while it was traveling at a speed of from 15 to 18 miles per hour.
The collision occurred in the east-bound lane of traffic on the highway. The front of the truck struck the right side of the engine at a point about three to five feet from the right rear corner of that engine. It is apparent from these last mentioned facts alone that the front of the engine had completely crossed the highway and had traveled several feet beyond it before the accident occurred. Skid marks on the highway showed that the truck skidded a distance of 60 feet immediately before it collided with the train engine.
Plaintiff testified that he first saw the engine when he was about 40 to 60 feet from the track, that the engine at that time was traveling south and that it was about three feet north of the highway. He stated that he attempted to apply his brakes but that his truck struck the engine about the time his foot reached the brake pedal. We are convinced that plaintiff saw the engine when he was more than 40 to 60 feet from the track, because the truck skidded a distance of 60 feet immediately before the collision occurred and it must have traveled some additional distance while plaintiff was reacting to the danger.
Since a distance of at least 50 feet was required to bring the engine to a stop, it is apparent that the engineer would not have been able to stop it in time to avoid an accident unless he became aware of the danger and applied his brakes before the engine reached a point 50 feet from the crossing. The evidence shows that after the front of the engine reached a point beyond which it could not have been stopped in time to avoid an accident, it then traveled that distance of 50 feet to the highway, then an additional distance of 44 feet across the pavement and both shoulders of the highway, and then a few feet further beyond the highway before the collision occurred. It obviously traveled a distance of at least 1000 feet, therefore, after the engineer became powerless to avoid an accident and *599 before the collision occurred. Since the truck was being driven at a speed of two and one-half to three times the speed of the engine, we conclude that the truck was at least 250 or 300 feet from the crossing when the engine was 50 feet from it. The engineer, therefore, could not have stopped the engine and avoided an accident after the truck reached a point about 250 or 300 feet from the crossing.
The engineer, who was seated on the right side of the cab of the diesel yard engine which was involved in this accident, testified that he saw plaintiff’s truck approaching when the engine was about 1000 feet from the crossing, that he observed the 'truck as the engine traveled that distance, and that he blew the whistle and rang the automatic bell on the engine continuously from the time he first observed the truck until he reached the crossing. As we have already noted, the engine traveled at a speed of from 15 to 18 miles per hour that entire distance of 1000 feet, and it was still traveling at that speed when the collision occurred. The engineer also testified that there was nothing unusual about the manner in which the truck was being operated, that there was nothing to prevent the driver of the truck from seeing the engine or from hearing the signals, that drivers of motor vehicles approaching crossings of this kind frequently wait until they get close to the tracks before reducing their speeds and bringing their vehicles to a stop, and that he assumed that plaintiff could and would bring his truck to a stop before it reached the track.
The testimony of the engineer is supported by that of the brakeman who was seated in the rear portion of the cab of the engine and who observed the truck as it approached the crossing. The third member of the train crew, the conductor, was seated on the left side of the cab and for that reason he was unable to see the approaching truck. He confirmed the testimony of the engineer, however, as to the speed of the engine as it approached the crossing.
The law provides that no person shall drive a motor vehicle upon the intersection of a railroad track and a public highway “without first stopping at a distance of not less than ten feet nor more than 50 feet from the nearest track and looking for approaching trains.” LSA-R.S. 45 :- 563.
Also, LSA-R.S. 32:171 provides in part:
“A. Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:”

“(3) A railroad train approaching within approximately nine hundred feet of the highway crossing emits a signal in accordance with R.S. 45 :-561, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
“(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing.”
Under our jurisprudence, even if the record justifies a holding that the train crew should have noticed the truck before it reached the crossing, the members of the train crew would be entitled to assume that the truck driver would comply with the statutory law and jurisprudence of this state and would bring his truck to a stop before undertaking to negotiate the crossing, unless the truck’s approach to the crossing was so unusual as to place ordi-. narily prudent men on notice that it would not or could not be brought to a stop in time to avoid an accident. See Delta Fire and Casualty Co. v. Texas & Pacific Ry. *600 Co., 229 La. 710, 86 So.2d 681 (1956); Eggleston v. Louisiana & A. Ry. Co., 192 So. 774 (La.App. 2d Cir. 1939); Matthews v. New Orleans Terminal Co., 45 So.2d 547 (La.App. Orl. Cir. 1950); Bordenave v. Texas & New Orleans R. Co., 46 So.2d 525 (La.App. Orl. Cir. 1950); Levy v. New Orleans & Northeastern R. Co., 20 So.2d 559 (La.App. Orl. Cir. 1945); Hanks v. Arkansas & Louisiana Missouri Ry. Co., 62 So.2d 139 (La.App. 2d Cir. 1952); Leger v. Texas & P. R. Co., 67 So.2d 775 (La.App. 1st Cir. 1953); Parks v. Texas Pacific-Missouri Pacific Terminal R., 152 So.2d 845 (La.App. 4th Cir. 1963); Maryland Casualty Co. v. Gulf, Mobile and Ohio R. Co., 157 So.2d 302 (La.App. 4th Cir. 1963); Washington v. Yazoo & M. V. R. Co., 124 So. 631 (La.App. 2d Cir. 1929).
In the case of Delta Fire and Casualty Company v. Texas & Pacific Ry. Co., supra, our Supreme Court stated:
“Furthermore, there is another well-recognized rule of law which renders inappropriate the last clear chance doctrine — viz., that, even if the record justified a holding that the train crew should have noticed the truck and trailer before it reached the crossing, they would have been entitled to assume that the truck driver would comply with the statutory law and jurisprudence of this State and stop before undertaking to negotiate the crossing, as there was nothing so unusual about the truck’s approach as to place ordinarily prudent men on notice that it was in distress.” (Emphasis added.)
In the instant suit we agree with the trial judge that there was nothing so unusual about the speed of plaintiff’s truck or the manner in which it approached the crossing which might have indicated to any member of the train crew that the driver of the truck would not comply with the statutory law and jurisprudence of this state and would not bring his truck to a stop before it reached the crossing. We affirm the holding of the trial court, therefore, that the doctrine of last clear chance is not applicable here and that plaintiff is not entitled to recover from defendants.
For the reasons herein assigned the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.