_JjLEON A. CANNIZZARO, JR., Judge.
This case involves an accident in which a pedestrian, Donald Dolese, was hit by a bus owned by the New Orleans Regional Transit Authority (the “RTA”). After a bench trial, the trial court judge held that the fault for the accident should be allocated ninety percent to the bus driver and ten percent to Mr. Dolese. Transit Management of Southeast Louisiana, Inc., a private corporation that manages the RTA’s transit operations, was held liable for $1,000,000.00 in general damages and $506,760.75 in past and future medical expenses. This award was reduced by ten percent due to the fault of Mr. Dolese. Transit Management is now appealing the judgment. Mr. Dolese answered the appeal claiming that the amount of the award *748 should be increased. Lexington Insurance Company is also a party to this appeal. Lexington was the excess insurance carrier [1] for Transit Management at the time of the accident, and its interests are aligned with those of Transit Management.
| .STATEMENT OF FACTS
Mr. Dolese was a sixty-three year old, mentally retarded gentlemen who suffered injuries when he was hit by an RTA bus. At approximately 8:00 p.m.[2] in the evening on June 5, 1999, an RTA bus driven by LaDorothy Demanuel[3], a Transit Management employee, hit Mr. Dolese as he was running across Elysian Fields Avenue near its intersection with Dauphine Street in New Orleans.
Mr. Dolese was on the paved strip in the median of Elysian Fields where Elysian Fields intersected with Dauphine when he began to run at an angle across Elysian Fields in a riverbound direction. Elysian Fields had three lanes of traffic on either side of the median. As Mr. Dolese ran across Elysian Fields, the bus driven by Ms. Demanuel was traveling in a river-bound direction in the right lane on a green light. Although Mr. Dolese crossed the left and middle lanes of Elysian Fields, he was struck by the bus in the right riverbound lane.
Two motorists, Jamie Gisevius and his then wife, Elisa Gisevius, observed the accident. They were traveling on Elysian Fields in the vicinity of the bus when the accident happened. Mr. Gisevius testified at the trial, and Mrs. Gisevius’ deposition was introduced into evidence. Both of the Giseviuses observed Mr. Dolese running through the traffic just before he was hit by the bus. Mr. Dolese was the only other witness who testified at the trial with respect to liability.
bMr. Gisevius testified that he first saw the bus when he was driving away from the corner of St. Claude Avenue and Elysian Fields. Mr. Gisevius testified that he was in the middle lane of Elysian Fields driving in a riverbound direction when the bus was in the right lane moving in the same direction. Mr. Gisevius wanted to merge into the right lane to make a right turn on Royal Street, and he thought he could pass the bus. He was traveling at a rate of speed of 35 miles per hour, and he could not overtake the bus. Therefore, he slowed down so that he could merge into the right lane behind the bus.
*749 After he was in the right lane behind the bus, he saw a pedestrian on the sidewalk in the Elysian Fields median. Mr. Gisevi-us testified that the bus was approaching a red light at the corner of Dauphine and Elysian Fields but that it did not come to a complete stop as it approached the red light, but he also said that it “[s]eemed like it stopped.” Mr. Gisevius did, however, see the brake lights on the bus. When the traffic light turned green, the bus “took off.” Mr. Gisevius testified that when he saw the bus accelerate when the light turned green, he “was horrified. Because [sic]I saw the guy crossing in front of the bus.” Mr. Gisevius testified that the “guy ended up under the back right-hand tire of the bus.”
Mr. Gisevius further testified that the traffic light for pedestrians was yellow when the pedestrian left the median. Additionally, Mr. Gisevius said that when the bus stopped prior to entering the intersection where Elysian Fields crossed Dau-phine, a car was also stopped in the left, riverbound lane of Elysian Fields. Mr. Gisevius also thought there might have been a car stopped in the middle lane. Mr. Gisevius testified that when the light at the intersection turned green, the cars began to proceed through the intersection, but they reduced their speed, “because you could see the guy was getting run over.”
|4Mr. Gisevius saw the pedestrian cross the left and middle riverbound lanes of Elysian Fields before he was hit by the bus in the right lane. Mr. Gisevius testified that the pedestrian was running or jogging across Elysian Fields at an angle in a riverbound direction when he was hit by the bus at a point that was approximately two bus lengths away from the intersection of Dauphine and Elysian Fields. Mr. Gisevius testified that after the pedestrian was hit by the bus, he heard people screaming for the bus to stop and for the bus driver to move the bus off of the pedestrian.
Mrs. Gisevius testified in her deposition that when the bus hit the pedestrian, she was sitting in the front seat of the car that her husband was driving riverbound on Elysian Fields. She testified that the car was in the middle lane on Elysian Fields and that the bus was in the riverbound right lane. Mrs. Gisevius first noticed the bus about a block before it reached the site of the accident. She said that when the bus slowed down for the red light at the intersection of Elysian Fields and Dau-phine, the car in which she was riding was positioned beside the bus with the bus in the right lane and the car in the middle lane.
When Mrs. Gisevius first saw the pedestrian, he was in the left lane of Elysian Fields, and he was running toward an upcoming bus stop. Mrs. Gisevius testified that when the bus hit the pedestrian, the car in which she was riding might have actually been behind the bus in the right lane. Mrs. Gisevius did not recall seeing any brake lights on the bus immediately prior to its hitting the pedestrian, but she did testify that the bus “proceeded to drive over this man and finally stopped on the back wheel — he was under the back wheel of the bus.” Mrs. Gisevius asked her husband to “pull over,” and when he did, she approached the accident scene.
IfiAt the scene of the accident, she “saw the man under the wheel of the bus and asked the driver of the bus to, please, roll off of him.” The bus driver responded to Mrs. Gisevius’ request by saying, “No, I can’t move until I make a phone call.” Mrs. Gisevius then said, “You must move off of him now.” At this point the bus driver “rolled backwards ... to get off of him.”
Mrs. Gisevius further testified that when the accident occurred, it was daylight and *750 she did not see any vehicles in the area with headlights on. She also said that she was not sure when the accident occurred, but she was certain that it was not as late as 8:00 p.m. Additionally, Mrs. Gisevius could not estimate the speed of the bus from the point that the bus entered the intersection of Dauphine and Elysian Fields until the time of the accident, but she did state that the pedestrian was outside of the crosswalk when he was running diagonally in the direction of the river across Elysian Fields.
Mr. Dolese, the pedestrian who was hit by the bus, testified at the trial. Mr. Dolese testified that he was fifty years old[4], that he did not like living in the nursing home where he lived, and that he wanted to live alone. Regarding the accident, Mr. Dolese stated, “Me walked. The city bus rolled over my leg.” When he was asked whether it hurt when the bus rolled over his leg, Mr. Dolese said, “Sure.” He also testified that he had “two ponies” or beers prior to the accident and that he had gone to a parade that day.[5]
On cross-examination, Mr. Dolese responded in the affirmative when he was asked whether he had been in a bar prior to the accident, whether he was hurrying home because he had to use the bathroom, and whether he saw that the bus was | ^moving when he left the median. Mr. Dolese responded negatively when he was asked on cross-examination whether he thought he could cross the street without getting hit by the bus. When he was asked why he did not stop when he knew the bus would hit him, Mr. Dolese answered, “I’m going pee-pee.” Finally, Mr. Dolese answered affirmatively when he was asked on cross-examination whether he had been hit in two other accidents, once by a truck and once by a car.
Neither Mr. Dolese nor Transit Management presented the testimony of an accident reconstruction expert at the trial. They did stipulate, however, that if the accident reconstruction experts that they had consulted in connection with this case were to testify, they would testify that the point of impact between the bus and Mr. Dolese was approximately 56 feet from the crosswalk at the intersection of Dauphine and Elysian Fields. The crosswalk to which the stipulation referred was the crosswalk on the river side of the intersection.
Robin Steiner, a social worker at Fern-crest Manor, where Mr. Dolese was a resident, testified that Mr. Dolese refused to use the prosthetic leg that had been prescribed for him. She further testified that Mr. Dolese had conflicts with his roommates, that he wanted to live alone, and that he had a hard time living with anyone. She also testified generally regarding the care Mr. Dolese was given at the nursing home and the cost of that care.
James Hunnicutt and his wife, Frances Hunnicutt, testified at the trial regarding Mr. Dolese’s lifestyle both prior to the accident and after the accident. Mr. Dolese had been employed by Mr. Hunni-cutt as a drugstore delivery man. He made deliveries on his bicycle and did odd jobs at the store. Mr. Dolese worked for Mr. Hunnicutt until he closed his drugstore. Mr. and Mrs. Hunnicutt had helped Mr. Dolese manage his affairs for a number of years, and they were still doing so |7at the time Mr. Dolese was injured. They saw Mr. Dolese almost daily prior to his accident, and they visited the nursing *751 home once a week after he moved there. The Hunnicutts testified that Mr. Dolese spent a lot of time prior to his accident riding his bicycle, which was something he enjoyed doing. They also testified that he was unhappy at the nursing home and wanted to live independently.
At the trial the parties stipulated that the total figure for the future medical and rehabilitation expenses for Mr. Dolese would be $345,000. Additionally, Dr. Robert A. Sellards testified at the trial regarding the medical aspects of the case. Dr. Sellards testified that Mr. Dolese arrived at the emergency room at Charity Hospital with injuries to both of his lower legs. Despite aggressive treatment and several surgical procedures, Mr. Dolese’s left leg had to be amputated above the knee. The deposition of Dr. Farokh Contractor, a rehabilitation specialist at Touro Infirmary where Mr. Dolese underwent rehabilitation after his discharge from Charity Hospital, was also entered into evidence. Dr. Contractor testified that Mr. Dolese was a good candidate for a prosthetic leg.
At the trial several exhibits were introduced into evidence. One exhibit contained Mr. Dolese’s medical records showing that the percentage of ethanol in his blood when he was admitted to the emergency room at Charity Hospital on the night of the accident was 0.211 percent, an amount well above the legal limit of blood alcohol permitted for driving a vehicle. Another exhibit showed that on the date of the accident sunset was at 7:59 p.m. and that on that date the end of civil twilight, the time at which artificial lighting is needed, was 8:26 p.m.
^DISCUSSION
Standard of Review
In Rosell v. ESCO, 549 So.2d 840 (La. 1989), the Louisiana Supreme Court discussed the scope of the appellate court’s review of a trial court’s findings of fact as follows:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. ...
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
Id. at 844.
Where the trier of fact, however, has not applied the correct law in arriving at its conclusions, the standard of review that this Court must use is different. In the Rosell case, the Supreme Court stated:
Nevertheless, when the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits.
549 So.2d at 844, n. 2, citing Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
| JBasis of the Trial Court’s Judgment
In her reasons for judgment the trial court judge noted that La. R.S. 32:213 *752 imposes a duty on pedestrians to refrain from entering the path of oncoming traffic. La. R.S. 32:213 provides as follows:
A. Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway.
B. Between adjacent intersections at which traffic-control signals are in operation pedestrians shall not cross at any place except in a marked cross walk.
Nevertheless, the trial court judge found that Mr. Dolese’s violation of this statute did “not operate as a complete bar to recovery.” She then noted that La. R.S. 32:214 requires motorists to exercise care to avoid collisions with pedestrians. La. R.S. 32:214 reads as follows:
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
The trial court judge then stated in her reasons for judgment that “the transit operator, LaDorothy Demanuel failed to see the plaintiff, Donald Dolese, who could have been seen if she were maintaining a sharp and vigilant lookout ahead.” The trial court judge also found that there was no evidence that Ms. Demanuel’s view was obstructed, that there was no reason that Ms. Demanuel could not have seen Mr. Dolese, and that she could have avoided hitting Mr. Dolese had she seen him. The trial court judge then apportioned fault between Mr. Dolese and Ms. Demanuel in the amounts of ten percent and ninety percent, respectively. The trial |incourt judgment based her findings regarding the relative liability of the parties on the doctrine of last clear chance.
Last Clear Chance
The doctrine of last clear chance was originated to ameliorate the harsh results that could occur under the concept of contributory fault, which barred any recovery by the plaintiff if he were negligent in any way. In fact, at least one commentator has commented that “[i]t is almost universally accepted that the last clear chance doctrine must disappear whenever a comparative fault regime — particularly, a ‘pure’ comparative fault regime like Louisiana’s — goes into effect.” David W. Robertson, Love and Fury: Recent Radical Revisions to the Law of Comparative Fault, 59 La. L.R. 175, 188-89 (Fall 1998). Nevertheless, as in the instant case, courts still invoke the doctrine of last clear chance to apportion fault when a plaintiff is negligent.
In Delta Fire & Casualty Co. v. Texas & Pacific Railway Co., 229 La. 710, 715, 86 So.2d 681, 682 (1956), the Louisiana Supreme Court stated that the plaintiff bears the burden of proof in showing that a defendant had the last clear chance to avoid an accident. See also Parks v. Texas Pacific-Missouri Pacific Terminal Railroad of New Orleans, 152 So.2d 845, 848 (La.App. 4th Cir.1963), where this Court stated that “[i]n order for the doctrine of last clear chance to control the' case, the burden of proof was upon the plaintiff. ...”
In Scott v. Glazer, 164 So.2d 185 (La. App. 4th Cir.1964), this Court discussed the doctrine of last clear chance as follows:
A litigant relying upon the doctrine of last clear chance has the burden of proving all facts and circumstances essential to its application. Before the doctrine can be successfully invoked three essential facts must be established: (1) that *753 the person invoking the |n doctrine was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that the person against whom the doctrine is invoked actually discovered or was in a position where he could and should have discovered such other person’s peril; and (3) that at such time the person against whom the doctrine is invoked could have avoided the accident with the exercise of reasonable care.
164 So.2d at 187 (citations omitted).
Liability for the Accident
The evidence in this case shows very clearly that Mr. Dolese was negligent. He crossed a three-lane thoroughfare outside of a crosswalk against the pedestrian traffic light either without considering the consequences of his actions or in complete disregard of those consequences. The testimony of the Giseviuses and of Mr. Dolese himself establishes Mr. Dolese’s negligence. Additionally, the medical evidence shows that at the time of the accident Mr. Dolese was very intoxicated. His level of intoxication was sufficient to seriously impair one’s judgment as well as one’s motor skills.
The only evidence that Ms. Demanuel was negligent is the testimony of the Gi-seviuses. That evidence consists of their statements that they and other motorists driving on Elysian Fields at the time of the accident were able to see and avoid hitting him. There is no evidence that Ms. Demanuel was inattentive to her driving, no evidence that she was speeding or in violation of any traffic laws, and no evidence that she saw or should have seen Mr. Dolese. The vantage point from which the Giseviuses saw Mr. Dolese running across Elysian Fields was very different from the vantage point of Ms. Deman-uel. She was in a bus in the right lane; they were in a car either in the right or the middle lane, depending on whose testimony is considered. The differences between the vantage points of the | ^Giseviuses and Ms. Demanuel are too great to extrapolate liability to Ms. De-manuel based on what the Giseviuses observed.
Unfortunately, Ms. Demanuel was not a witness at the trial, and we cannot determine from the record what she saw or should have seen as Mr. Dolese was crossing Elysian Fields. There is insufficient evidence in the record for us to determine the angle at which Mr. Dolese was running across the street. If he were running closely alongside the bus and suddenly darted in front of the bus, it would have been more difficult for Ms. Demanuel to have seen him than if he had been running perpendicular to the front of the bus in the range of the driver’s peripheral vision. The record. is devoid of critical evidence needed to determine whether Ms. Deman-uel saw or should have seen Mr. Dolese in time to avoid the accident.
In LeBlanc v. Stevenson, 2000-0157, p. 3 (La.10/17/00), 770 So.2d 766, 770, the Louisiana Supreme Court stated that “[a]l-though the appellate court must accord deference to the trial court, it is cognizant of our constitutional duty to review facts, not to decide if it, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or dearly without evidentiary support.” (Emphasis added.) In the instant case we find that the conclusion that Ms. Demanuel was negligent in hitting Mr. Dolese is clearly without evidentiary support. Additionally, we find that Mr. Dolese did not meet the burden of proof required to invoke the doctrine of last clear chance. The only evidence in this case that would even suggest that Ms. Demanuel had an opportuni *754 ty to avoid the accident was the testimony of Mr. and Mrs. Gisevius. Their testimony presumes, without evidence, that Ms. De-manuel could have avoided the accident had she been appropriately attentive.
| ^Because there is a lack of eviden-tiary support for the finding that Ms. De-manuel was negligent in hitting Mr. Dolese and because Mr. Dolese did not meet the necessary burden of proof to show that Ms. Demanuel had the last clear chance to avoid hitting Mr. Dolese, we have reviewed the record in this case de novo as required by Rosell v. ESCO, 549 So.2d 840, 844, n. 2 (La.1989). After reviewing the record de novo, we have determined that Mr. Dolese’s negligence in running across Elysian Fields outside of a crosswalk when the light for the vehicles traveling on that thoroughfare was green was the sole proximate cause of his being hit by the bus driven by Ms. Demanuel. Conversely, we find that Ms. Demanuel was free from fault in hitting Mr. Dolese.
Liability for the Intentional Acts of Ms. Demanuel
There is unrefuted evidence from the testimony of both of the Giseviuses that after the bus hit Mr. Dolese, his legs were unnecessarily trapped under the right rear tires of the bus for approximately thirty seconds. Ms. Demanuel initially refused to move the bus off of Mr. Dolese’s legs, because she wanted to make a telephone call first. Only after Mrs. Gisevius, and possibly others, demanded that Ms. Demanuel move the bus off of Mr. Dolese’s legs did she do so. Because of her intentional refusal to move the bus, Mr. Dolese suffered unnecessary pain and suffering from having the weight of the bus on his legs at least thirty seconds longer than was necessary.[6]
La. C.C. art. 2320 provides that “[mjasters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” When an employee commits an intentional | utort, however, vicarious liability will attach only when the employee is acting within the ambit of the employee’s assigned duties and in furtherance of the employer’s objective. See, e.g., Baumeister v. Plunkett, 95-2270 (La.5/21/96), 673 So.2d 994, 996; Faust v. Greater Lakeside Corp., 98-2853, p. 7 (La.App. 4 Cir. 9/12/01), 797 So.2d 748, 754.
In the instant case we find that Ms. Demanuel was acting within the scope of her employment when she refused to move the bus.[7] Therefore, Transit Management is liable for her intentional failure to immediately relieve the pain and suffering caused by the bus being on top of Mr. Dolese’s legs. Therefore, we have determined that there should be judgment in favor of Mr. Dolese and against Transit Management in the amount of $100,000.00. We think that this amount is sufficient to compensate Mr. Dolese for the pain and suffering he incurred during the extra thirty seconds that the bus remained on his legs after it could have been moved. Trial Court Judgment
Because we have determined that Mr. Dolese failed to prove by a preponderance of the evidence that Transit Management’s negligence was a proximate cause of the *755 accident that occurred when the bus driven by Ms. Demanuel hit him, it is unnecessary for us to address the assignments of error raised by Transit Management in its brief. We do, however, need to render a judgment on the merits of the case, because we have determined that there was 1T irreversible error in the trial court judgment. See Rosell v. ESCO, 549 So.2d 840, 844, n. 2 (La.1989).
The judgment of the trial court is hereby reversed, and we hereby render judgment against Transit Management and in favor of Mr. Dolese in the amount of one hundred thousand ($100,000.00) dollars in general damages plus legal interest from the date of judicial demand until paid. All parties shall bear their own costs.
CONCLUSION
For the foregoing reasons, we find that there was no negligence or liability on the part of Transit Management for the damages Mr. Dolese incurred when he was hit by the bus. We do find, however, that Ms. Demanuel committed an intentional tort when she refused to move the bus off of Mr. Dolese’s legs for a period of thirty seconds. We, therefore, award Mr. Dolese general damages in the amount of one hundred thousand ($100,000.00) dollars as compensation for his additional pain and suffering.
JUDGMENT REVERSED AND RENDERED.

. In the original judgment rendered by the trial court, Lexington and Transit Management were both held liable for the entire amount of the damages awarded to Mr. Dolese. Lexington then filed a motion for a new trial limited to the issue of the insurance coverage owed by Lexington. The motion for a new trial was granted, and a new judgment was rendered providing that "in the event that the principal, interest, and costs due under this judgment should exceed the sum of two million dollars,” Lexington would be solidarity liable with Transit Management for all sums due in excess of that amount. Transit Management would be solely liable for all amounts up to two million dollars.

. In her Reasons for Judgment the trial court judge stated that the accident occurred at approximately 8:00 p.m., but both Mr. Dolese and Transit Management state in their briefs that the accident occurred at approximately 8:25 p.m.

.Although Ms. Demanuel did not testify at the trial, the parties stipulated that Ms. De-manuel was driving the bus in the course and scope of her employment with Transit Management at the time of the accident. Ms. Demanuel was a named defendant in this case, but she was never served. She was dismissed from the litigation with prejudice at the trial. Transit Management remained liable, however, for any negligence on the part of Ms. Demanuel under the doctrine of re-spondeat superior. La. C.C. art. 2320.

. He was actually in his mid-sixties at the time of the trial.

. Evidence that there were no parades scheduled in New Orleans on the day of the accident was presented at the trial.

. Mr. Gisevius testified that the bus remained on Mr. Dolese’s legs for thirty seconds before the bus driver moved the bus.

. The record does not reflect exactly why Ms. Demanuel refused to move the bus other than that she wanted to make a telephone call first. At oral argument there were indications that she wanted to telephone her supervisor for instructions before she moved the bus.